781 So.2d 416 (2001)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
Beverly THORNTON and Murray James Thomas, Appellees.
No. 4D99-3767.
District Court of Appeal of Florida, Fourth District.
January 17, 2001.
*417 Rosemary B. Wilder and Richard A. Sherman of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Jack A. Nieland of Law Offices of Lawrence J. Signori, West Palm Beach, for appellant.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., Lawrence U.L. Chandler of Lawrence U.L. Chandler, P.A., West Palm Beach, and for Appellee-Beverly Thornton.
FINE, EDWARD H., Associate Judge.
This is an appeal from a verdict in favor of Mrs. Thornton arising out of a claim of personal injury caused by a motor vehicle crash. Appellant Allstate was joined as a defendant as the uninsured/underinsured motorist carrier. Mrs. Thornton presented evidence that as the result of this crash she suffered a permanent injury consisting of two herniated disks in her spinal column that would need care for the rest of her life and perhaps surgery. She had a mortality table life expectancy of 35.1 years. The approximate cost of surgery was $50,000.00. The defense presented evidence disputing that her injury arose from the accident, that she had the need for any future surgery, or that she suffered any sort of permanent injury as the result of this accident.
The jury returned a verdict totaling $213,750.00. The jury found the defendant driver was 100% negligent and awarded: $850.00 for past lost wages, $75,000.00 for past intangible damages, $10,500.00 for past medical expenses, $18,000.00 for future lost wages, $30,000.00 for future intangible damages, and $80,000.00 for future medical expenses.
Appellant seeks review of the trial court's denial of its peremptory challenge against the first juror on the venire panel, who happened to be the only African American juror on the panel. The juror in question was Mr. Waldon. In 1968 Mr. Waldon had been involved in an auto accident, suffered a broken hip and pelvis and injury to his neck. As a result, thirty-one years later he was still using a cane and continued to occasionally suffer discomfort from his injuries.
The defense stated its reasons for peremptorily challenging Mr. Waldon as his *418 prior injuries from his accident, his present day residual problems, and the fact that his injuries affected his neck, lower back, and portions of his legs. This was a trial of claims of traumatic neck and back injuries with resulting pain including leg pain.
Appellee's attorney objected to this challenge stating:
I'm left with a dilemma. She's entitled to a Jury of her peers. We've had sixteen jurors. One of them, out of sixteen, is black. My client is black, and all of themnot all of them, but most of them raised their hand to various injuries, and they've stricken the only one on the panel who is black.
I think that's constitutionally infirm, yet they've shownthey've alleged, and I think it has to be said that what they've alleged is true, there are some infirmities with him as a juror, like there are with the others, and I think they're within their rights to exercise a peremptory strike on him, unless I don't know the law. I don't know the law, but
. . . .
The court denied the peremptory challenge stating:
Well, he was specifically asked if he could be fair, and he was one you asked if he could be fair, even after noting the neck and back injuries, and he said, just as the others did, that he could be, so I am going to overrule you on that one.
MR. NIELAND (defense counsel): You're finding that my reason is not race neutral?
THE COURT: Yes. He specifically said he could be fair. That was after you asked him, and after he noted the injuries.
Discussion:
Voir dire proceedings are extraordinarily rich in diversity and no rigid set of rules will work in every case. Accordingly, reviewing courts should keep in mind two principles when enforcing the above guidelines. First, peremptories are presumed to be exercised in a nondiscriminatory manner. Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous. The right to an impartial jury guaranteed by article I, section 16, is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense.
Melbourne v. State, 679 So.2d 759, 764, 765 (Fla.1996)(footnotes omitted).
Once the objection which the judge understood to be an allegation of racial discrimination was made (step 1), the burden shifted to appellant who was the proponent of the strike to come forward with a race-neutral explanation (step 2). See Harrison v. Emanuel, 694 So.2d 759 (Fla. 4th DCA 1997).
The defense struck almost everyone else that had a history of severe injury or of a prior auto accident, unless stricken by the plaintiff. The only exception was juror Scontras, but by that point, the defense had no peremptory challenges left.
If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.
Melbourne, 679 So.2d at 764.
The record sheds no negative evidence of any of these relevant circumstances except the racial makeup of the jury.
*419 The judge noted that Mr. Waldon assured the court that he could be fair. However the evaluation of the juror's credibility is not the test. The test is the credibility of the attorney exercising the strike.
In Young v. State, 744 So.2d 1077, 1082-83 (Fla. 4th DCA 1999), it was stated that:
Most significant in Melbourne is the focus on the trial court's role in evaluating the "genuineness" of an explanation for striking a juror. A trial court must analyze a subjective issuewhether a proffered explanation for a challenge is a pretext, which means that it conceals an intent to discriminate based on race. As the supreme court recognized, identifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility. See id. at 764. In our legal system, credibility is a matter solely within the purview of a finder of fact. For this reason, a trial judge's ruling on the "genuineness" of a peremptory challenge "will be affirmed on appeal unless clearly erroneous." Id. at 764-65; Smith v. State, 699 So.2d 629, 636-37 (Fla.1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1194, 140 L.Ed.2d 323 (1998); cert. denied, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998). As the supreme court wrote in Reed v. State, 560 So.2d 203, 206 (Fla.1990), in applying the law on peremptory challenges, "we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process." See Files v. State, 613 So.2d 1301 (Fla. 1992); Johnson v. State, 717 So.2d 1057, 1061 (Fla. 1st DCA 1998), review granted, 727 So.2d 906 (Fla.1998).
In this instance the judge applied the wrong legal standardthe evaluation of the juror's credibility. As a result, the denial of appellant's peremptory strike was clearly erroneous and requires the final judgment be reversed and this cause remanded for a new trial.
The remaining points on appeal regarding the former version of Florida Statute 768.77(2)(1986), and the question of remittitur are by this decision rendered moot.
REVERSED AND REMANDED.
KLEIN and GROSS, JJ., concur.